## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CORINNE CHAPMAN**                                         **CIVIL ACTION**

**VERSUS**                                                          **CASE NO. 13-6384**

**LHC GROUP, INC.**                                              **SECTION: "G" (3)**

## ORDER

Before the Court is Plaintiff Corinne Chapman's "Motion to Conditionally Certify a Collective Action and Issue Notice,"[1] wherein Chapman moves this Court to conditionally certify a collective action pursuant to section 216(b) of the Fair Labor Standards Act (the "FLSA")[2] and authorize notice to be sent to putative class members. Having considered the motion, the memoranda in support and opposition, the record, and the applicable law, the Court will grant the motion.

## I. Background

### A.    *Factual Background*

Chapman worked for 15 years as an office manager for Ochsner Home Health Corp. ("Ochsner") in Covington, Louisiana.[3] Chapman avers that Ochsner was acquired by Defendant LHC Group, Inc. ("LHC") in 2009.[4]   According to Chapman, her responsibilities included scheduling, recording, and reporting the work hours of LHC's hourly employees.[5] Chapman alleges

---

[1] Rec. Doc. 19.

[2] 29 U.S.C. §

[3] Rec. Doc. 19-1 at p. 2.

[4] *Id.*

[5] *Id.*

1

that LHC never instructed or trained its payroll employees how to properly record hours worked by hourly employees, or with respect to the record-keeping requirements of the FLSA.[6]

For several years, according to Chapman, LHC has been reducing its employment costs, including reducing its work force and implementing record keeping and compensation policies prohibiting the payment of overtime wages.[7] Despite the reductions in force, LHC allegedly instructed its hourly employees not to record any overtime hours on their time sheets, even if the employees worked hours in excess of the 40 hour work week.[8] Chapman alleges that LHC supervisors, under "direct orders" from LHC's senior management, instructed her to allow and accept inaccurate time records from employees who actually worked in excess of 40 hours per week, but recorded only 40 hours per week on his or her time sheet.[9] Chapman additionally alleges that she was instructed to modify time sheets of any employees who reported working in excess of 40 hours per week so that the time sheets would show only 40 hours worked.[10]

Chapman alleges that she was regularly scheduled to work exactly 8 hours a day and 40 hours every work week, and that she was scheduled to take a 30 minute unpaid lunch break every day.[11] Still, she alleges, she regularly worked in excess of eight hours per day, but was prohibited from reporting this overtime on her time sheet and consequently was not compensated for that

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.* at p. 4.

[10] *Id.*

[11] *Id.*

time.[12]   According to Chapman, prior to June 2013, she reported to supervisors with the title "Director of Nursing."[13] After June 2013, Chapman was supervised by Cheyl Chellette, Director of Ochsner Home Health of Covington and Ochsner Home Health of Kenner.[14]   Chapman attests that "[u]pon information and belief, Defendant's record–keeping and compensation policies were dictated and issued by Defendant's senior management and issued to all of defendants's [sic] locations throughout Louisiana and the United States."[15]

**B.      *Procedural History***

Chapman filed the pending Motion to Certify Class on April 4, 2014.[16] LHC filed a memorandum in opposition on April 22, 2014,[17] and Chapman filed a memorandum in further support of her motion on May 2, 2014.[18] On July 11, 2014, Chapman filed a supplemental memorandum in support of her motion.[19] LHC filed a second memorandum in opposition on July 30, 2014,[20] and an additional supplemental memorandum on August 1, 2014.[21] Chapman has

---

[12] *Id.* at p. 5.

[13] *Id.*

[14] *Id.*

[15] *Id.* at p. 7.

[16] Rec. Doc. 19.

[17] Rec. Doc. 23.

[18] Rec. Doc. 32.

[19] Rec. Doc. 33.

[20] Rec. Doc. 42.

[21] Rec. Doc. 45.

submitted the sworn statement of opt-in plaintiff Marla Cerise,[22] and has identified Trudy Weiss[23] and Julie  Dupuy[24] as additional opt-in Plaintiffs.

## II. Parties' Arguments

### A.   *Chapman's Arguments in Support*

Chapman seeks to represent a collective class of individual plaintiffs in their FLSA claims against LHC for unpaid overtime and minimum wages for off-the-clock work.[25] According to Chapman, the FLSA affords workers the right to sue collectively on behalf of themselves and others "similarly situated" for violations of the Act's minimum wage provisions and overtime protections.[26] When making the "similarly situated" inquiry and determining whether notice should be given, Chapman avers, district courts in the Fifth Circuit follow the "two stage" *Lusardi* approach.[27]  In the first stage, according to Chapman, the court determines whether notice should be sent to potential members of the collective action who are "similarly situated." Chapman argues that this stage is fairly lenient an typically results in "conditional certification" of a representative class.[28] The second stage occurs after the parties substantially complete discovery, whereby the defendant may move to decertify the collective action if the class members are not actually similarly situated.[29]

---

[22] Rec. Doc. 19-2.

[23] Rec. Doc. 23-2 at p. 3.

[24] Rec. Doc. 36.

[25] Rec. Doc. 19-1 at p. 5.

[26] *Id.* (citing 29 U.S.C. § 216(b)).

[27] *Id.* at p. 6 (citing *Mooney v. Aramco Services, Co.,* 54 F.3d 1207, 1213–14 (5th  Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003)).

[28] *Id.* (citing *Lang v. DirecTV, Inc.*, 2011 WL 6934607, * 4 (E.D. La. Dec. 30, 2011)).

[29] *Id.* at p. 8 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995)).

Chapman argues that conditional certification is proper in this case because LHC's allegedly unlawful record-keeping and compensation policies and practices were enforced against all of LHC's nonexempt employees nationwide.[30] According to Chapman:

> Plaintiff and the other opt-in-plaintiffs work in the regions covered most directly by Defendant's most senior management, and as such, Plaintiff and the other opt-in plaintiffs believe that the record-keeping policies and procedures are mandated or at least condoned by Defendant's most-senior managers. This indicates the policies and practices are in place at all of Defendant's business locations across the country.[31]

Chapman additionally avers that there are other aggrieved individuals who are similarly situated, in that they are nonexempt employees subjected to the same policies and practices regarding record keeping and compensation.[32] Chapman argues that the Plaintiffs, including herself, include two office managers and a file clerk. She contends that:

> Although the titles may vary and some fo the job duties may vary by position, all were subjected to the same polices; all aggrieved parties are paid an hourly wage; all aggrieved parties perform administrative office tasks, including filing, completing forms; [sic] data input; answering phones, assisting nurses and therapists with paperwork; and assisting managers with paperwork. All aggrieved parties were assigned workloads that required working in excess of 40 hours a workweek [sic] to complete.[33]

Chapman additionally argues that aggrieved individuals, including the two who have already joined, want to opt-in to the lawsuit.[34] Chapman contends that her proposed Notice and Consent Forms are

---

[30] *Id.*

[31] *Id.* at p. 9.

[32] *Id.*

[33] *Id.* at pp. 9–10.

[34] *Id.* at p. 10.

accurate, informative, and similar to other forms approved in this district.[35] Chapman accordingly requests the Court to authorize her to issue notice to all putative class members who meet the following requirements:

> (a) They were employed by Defendant at any point from April 4, 2011 to the present as a nonexempt employee;
> (b) They were compensated on an hourly wage basis;
> (c) They worked more than forty (40) hours in any given work week; and
> (d) They were prohibited or otherwise did not properly record their work hours over 40 hours in a work week.[36]

Chapman additionally argues that LHC must provide contact information for putative collective class members within 10 days of the Court's granting of conditional certification.[37]

## B. LHC's Arguments in Opposition

LHC argues that Chapman's motion must be denied because "she does not come close to meeting the admittedly lenient standard for conditionally certifying an FLSA collective action."[38] According to LHC, the majority of district courts in the Fifth Circuit, including this Court, have adopted the two-stage process recognized in *Lusardi*.[39] During the initial stage, according to LHC, a plaintiff bears the burden to demonstrate: (1) a reasonable basis for believing that aggrieved individuals exist; (2) that those aggrieved individuals are similarly situated to her; and (3) that those individuals desire to opt into the lawsuit.[40] According to LHC, although this stage of the certification

---

[35] *Id.* at p. 11 (citing *Akins v. Worley Catastrophe Response, LLC*, CIV.A. 12-2401, 2013 WL 1412371 (E.D. La. Apr. 8, 2013).

[36] *Id.*

[37] *Id.*

[38] Rec. Doc. 23 at p. 2.

[39] *Id.* at 10 (citing *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *7 (E.D. La. Dec. 30, 2011)).

[40] *Id.* at 11 (citing *Lang*, 2011 WL 6934607 at *4, *7).

process is relatively lenient, conditional certification is far from automatic and must only be granted in appropriate circumstances.[41] Here, LHC argues, Chapman offers only "conclusory allegations that certain unidentified employees worked off the clock at the direction of unidentified supervisors and 'senior management' at unspecified points in time."[42]

LHC contends that Chapman has not demonstrated a reasonable basis for believing that aggrieved individuals exist, because "her allegations are that unidentified individual supervisors purportedly deviated from these written policies through unspecified verbal instructions to unidentified employees at unidentified locations at unidentified times."[43] LHC further avers that Chapman has failed "to provide any facts suggesting that a back-channel whisper campaign to violate LHC written policy existed even at her own office, much less nationwide."[44] Additionally, LHC argues that Chapman does not identify the individuals who allegedly gave instructions to modify employee time cards, or when the alleged instructions were given.[45] LHC moreover contends that Chapman has failed to provide any competent evidence that hourly employees at all LHC facilities were subjected to the same alleged unlawful pay policy.[46] According to LHC:

> [G]iven the substantial amount of overtime paid to employees at the Covington facility and other LHC operations, it is clear that any alleged failure to follow LHC's lawful written policies by any individual supervisor is the exception – not the rule – the complete opposite of the "single unlawful policy" that must exist to justify

---

[41] *Id.* (citing *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703, 706-07 (N.D. Tex. 2008); *Lang*, 2011 WL 6934607, at *7; *Carey v. 24 Hour Fitness USA, Inc.*, No. 10-3009, 2012 WL 4857562, at *1 (S.D. Tex. Oct. 11 2012)).

[42] *Id.* at p. 14.

[43] *Id.* at p. 16.

[44] *Id.*

[45] *Id.* at pp. 16–17.

[46] *Id.* at p. 17.

conditional certification.[47]

LHC additionally contends that the scope of Chapman's proposed class is unclear because she defines the putative class in different ways throughout her motion.[48]

LHC next argues that Chapman has failed to demonstrate that members of the putative class are "similarly situated" to her.[49] According to LHC, the Court must determine whether the ultimate issues in this case are capable of resolution on the basis of collective or representative proof, or whether such resolution will require individualized proof as to the claims of each plaintiff in the case.[50] LHC cites several district court decisions demonstrating, according to LHC, that courts are particularly reluctant to conditionally certify "off-the-clock" cases like this one because such cases are inherently not susceptible to resolution using collective proof and thus not appropriate for collective action certification.[51]

According to LHC, because Chapman is focusing on alleged verbal deviations from LHC's written policy as the unlawful "policy" at issue, any determination of potential liability and damages for each putative class member will require the Court to examine (1) what each person was told by one or more supervisors at various points in time about recording (or not recording) all hours worked; (2) how each person construed or understood any instructions received from supervisors; (3) whether each person actually worked hours that he or she did not properly record and receive

---

[47] *Id.* at p. 19.

[48] *Id.* at p. 14 (citing Rec. Doc. 19-1 at pp. 11, 10, 9–10).

[49] *Id.* at p. 20.

[50] *Id.* (citing *Clay v. Huntington Ingalls Inc.*, No. 09-7625, 2011 U.S. Dist. LEXIS 155351, at *16 (E.D. La. Sept. 29, 2011); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 588 (E.D. La. 2008)).

[51] *Id.* at p. 22 (citing, e.g., *Richardson v. Wells Fargo Bank, N.A.*, No. 4:11-cv-00738, 2012 WL 334038, at *4 (S.D. Tex. Feb. 2, 2012); *Beecher v. Steak n Shake Operations, Inc.*, 904 F. Supp. 2d 1289, 1299 (N.D. Ga. 2012)).

8

payment for, or whether someone else improperly removed time from the employee's timecard; and (4) whether the supervisors or other appropriate representatives of LHC or the particular agency knew or had reason to know of the unrecorded or unpaid work.[52]

LHC contends that *Carey v. 24 Hour Fitness USA* is analogous to the present case.[53] There, according to LHC, the court denied certification because factual questions that would drive the resolution of the ultimate issue in the case would require extensive individualize analysis.[54] Next, LHC argues that Chapman has not demonstrated that others desire to opt into this case because only two other individuals have opted in, "both of whom worked in the same state as Chapman, and both of whom had previously worked at the same facility as Chapman and thus knew her personally."[55] According to LHC, "[t]his very minimal showing of interest in the case is not sufficient to meet Chapman's burden to show that other individuals wish to participate in the case."[56]

Finally, LHC objects to the proposed Notice submitted by Chapman and requests that, if the Court grants Chapman's motion, the Court at that time order the parties to meet and confer regarding the form and content of the Notice, and to submit a joint proposed notice.[57]

## C.    *Chapman's Reply in Further Support*

In response to LHC's memorandum in opposition, Chapman argues that LHC has engaged

---

[52] *Id.* at p. 23.

[53] *Carey v. 24 Hour Fitness USA, Inc.*, 2012 WL 4857562, at *1 (S.D. Tex. Oct. 11, 2012).

[54] Rec. Doc. 23 at p. 24.

[55] *Id.*

[56] *Id.* at p. 25 (citing, e.g., *Stiles v. FFE Transp. Servs., Inc*., 2010 WL 935469, at *1 (N.D. Tex. Mar. 15, 2010)).

[57] *Id.*

in a "smear campaign" against her, and that LHC mischaracterizes the law and the issues in an unfair attempt to increase Plaintiffs' burden at this stage of litigation.[58] Chapman reavers that, at this stage, she need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist.[59]

Chapman first argues that LHC was her employer as defined by the FLSA.[60] She next contends that she offers factual allegations and supporting evidence verifying her claim that LHC implemented a nationwide common decision, policy, or plan that violates the FLSA.[61] Chapman points to her Complaint, where she states that "Defendant instructed its hourly employees not to record any overtime hours on their time sheets even if the employees worked hours in excess of 40 hours in a work week."[62] Chapman further alleges that the policy was dictated by LHC's senior management and implemented in all LHC facilities, which is evidenced by the fact that Chapman and the opt-in Plaintiffs "were subjected to the same policy even though they had different job titles and worked at different locations."[63] Chapman additionally argues that she identified her supervisors and alleged what her supervisors instructed her to do in her petition and sworn statement.[64] Next, Chapman contends that *Carey* is distinguishable from the present case because there, the parties had

---

[58] Rec. Doc. 32 at p. 1.

[59] *Id.* at p. 2.

[60] *Id.* at p. 3 (citing 29 U.S.C. § 203(d)).

[61] *Id.* at pp. 4–5.

[62] *Id.* at p. 5 (citing Rec. Doc. 1 at ¶ 18).

[63] *Id.* at p. 5.

[64] *Id.* at p. 6.

already exchanged significant discovery.[65] Finally, Chapman avers that she clearly defined the proposed class in her motion.[66]

### D.      Chapman's Supplemental Materials

On July 14, 2014, the Court granted Chapman's July 11, 2014 "Motion for Leave to Supplement Plaintiff's Motion to Conditionally Certify the Case and Authorize Notice to Similarly Situated Persons."[67] Chapman attaches several documents that, she contends, exemplify and prove that LHC controlled every aspect of the business, including Chapman and the operations at each LHC location.[68]

### E.      LHC's Response in Further Opposition

LHC argues that the supplemental materials submitted by Chapman have not been authenticated, and "can have no impact on the Court's determination regarding whether to grant conditional certification."[69] Additionally, LHC contends, these documents "address none of the shortcomings previously identified by LHC in response to the motion."[70] Finally, LHC argues that the supplemental materials were in Chapman's possession when she originally filed her motion for conditional certification.[71] LHC avers that the documents have no bearing on Chapman's request for

---

[65] *Id.* at p. 8.

[66] *Id.* at p. 9 (citing Rec. Doc. 19-1 at p. 11).

[67] Rec. Doc. 37; 33.

[68] Rec. Doc. 33-1 at p. 2.

[69] Rec. Doc. 42 at p. 1.

[70] *Id.* at p. 2.

[71] *Id.*

conditional certification.[72]

### F.    LHC's Supplemental Response in Opposition to Plaintiff's Motion

According to LHC,  Julie Dupuy filed a Consent to Join Collective Action on July 14, 2014, and that this filing only reinforces the localized nature of Chapman's allegations and "heightens the irony that the only people who have sought to join this lawsuit in the eight months that it has been pending are former employees who worked at LHC-affiliated locations where Chapman herself worked."[73] LHC contends that Chapman was Dupuy's direct supervisor during Dupuy's employment at the LHC-affiliated home health agency in Covington.[74] LHC argues that since Dupuy worked as an office assistant at the same agency where Chapman worked, "it is literally impossible for any allegations that might be made by Ms. Dupuy to support certification of a nationwide collective action."[75] Moreover, according to LHC, only three individuals have opted-in to the lawsuit, and "[s]uch a paltry showing of interest is plainly not sufficient to justify conditional certification of a nationwide class."[76]

### III. Law and Analysis

### A.    Standard for Conditional Certification

The FLSA sets forth requirements for minimum wage, overtime pay, and record keeping for certain employees who are not exempt because they hold executive, administrative, or professional

---

[72] *Id.*

[73] Rec. Doc. 45 at pp. 1–2.

[74] *Id.* at p. 3.

[75] *Id.*

[76] *Id.* at p. 4 (citing, e.g., *Webber v. Coast Dental*, 2013 U.S. Dist. LEXIS 33046, at *7 (M.D. Fla. Mar. 11, 2013)).

positions.[77]  The FLSA also creates a private right of action for employees when these rights are violated.[78]  Under § 216(b) of the FLSA, one or more employees can pursue a collective action in a representative capacity on behalf of similarly situated employees.[79]  There are two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated" and (2) a plaintiff must consent in writing to take part in the suit. This latter requirement means that a representative action follows an "opt-in" rather than an "opt-out" procedure.[80]

The FLSA does not define the requirements for employees to be deemed "similarly situated." Instead, a two-step method is routinely utilized, which was originally articulated in *Lusardi v. Xerox Corporation*[81] and described in detail by the Fifth Circuit in *Mooney v. Aramco Services, Co.*[82] Under this approach, a court first determines at the "notice stage" whether notice should be given to potential members of the collective action, and this determination is usually made on the basis of "only . . . the pleadings and any affidavits."[83]  Because the court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and

---

[77]  29 U.S.C. §§ 206(a)(1), 207(a)(1), 213(a)(1).  The employer bears the burden of proving the applicability of an exemption.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974).

[78]  29 U.S.C. § 216(b).

[79]  "An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  *Id*.

[80]  *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[81]  118 F.R.D. 351 (D.N.J. 1987).

[82]  54 F.3d at 1213–14.

[83]  *See id.*

13

typically results in 'conditional certification' of a representative class."[84]   Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[85]  Although this is a lenient standard, "general allegations that the employer violated the FLSA are insufficient."[86]

At the notice stage, the burden is on the plaintiff to demonstrate that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[87]  The burden to show that plaintiffs are similarly situated rests on the plaintiff,[88] but "[a] plaintiff need only demonstrate a *reasonable basis* for the allegation that a class of similarly situated persons may exist."[89]  Plaintiffs need not be identically situated,[90] and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities.[91]  "Whether at the notice stage or on later

---

[84] *Id.* at 1214.

[85] *Id.* at 1214 n.8 (quoting  *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[86] *Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 WL 258988, at *4 (E.D. La. June 25, 2008) (Feldman, J.).

[87] *Lang v. DirecTV, Inc.*, No. CIV.A. 10 1085 G (1), 2011 WL 6934607, at *4 (E.D. La. Dec. 30, 2011) (Brown, J.); *see also Morales v. Thang Hung Corp.*, 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex., Aug. 14, 2009). *Hickson v. U.S. Postal Service*, No. 5:09-CV-83, 2010 U.S. Dist. LEXIS 104112, at * 18 (E.D. Tex., July 22, 2010).

[88] *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005).

[89] *Lima*, 493 F.Supp.2d at 798 (emphasis added).

[90] *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92–0043, 1992 WL 91946 (E.D. La., Apr. 16, 1992).

[91] *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *21-22 (E.D. La., Oct. 31, 2008) (Barbier, J.).

review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."[92] A plaintiff must do more than show the mere existence of other similarly situated persons, because "there is no guarantee that those persons will actually seek to join the lawsuit."[93]   Only those employees who affirmatively "opt-in" to the suit are bound by a collective action under the FLSA.[94]

If conditional certification is granted, the case then proceeds through discovery as a class action to the "merits stage," at which time the defendants may move for decertification.[95]  At that time, a more stringent approach governs and *Lusardi* applies a three-factor test, considering: (1) the extent to which employment settings are similar or disparate; (2) the extent to which any of the employer's defenses are common or individuated; and (3) fairness and procedural concerns.[96]  The court then makes "a factual determination on the similarly situated question,"[97] either allowing the representative action "to proceed to trial" or decertifying the class and dismissing without prejudice

---

[92] *Donohue v. Francis Serv., Inc.*, No. 04-170, 2004 WL 1161366, at * 2 (E.D. La., May 24, 2004) (citations omitted) (granting conditional certification where plaintiffs alleged a common policy of employer denying employees payment and finding affidavits and other documentary evidence sufficient to support the allegations).  "The Court rejects defendants' argument that such a class is problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement."  *Id.* at *3.

[93] *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F.Supp.2d 642, 647 (S.D. Tex. 2010) (citing *Ali v. Sugarland Petroleum*, No. 4:09–cv–0170, 2009 WL 5173508, at *2 (S.D. Tex., Dec. 22, 2009).  *See also, H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) ("[A]lthough the standard for satisfying the first step is lenient, . . . the court still requires at least substantial allegations that the putative class members were together victims of a single decision, policy or plan. . . .")(internal quotation omitted)).

[94] 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[95] *Mooney*, 54 F.3d at 1214.

[96] *Kuperman*, 2008 WL 4809167 at *5 (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 573 (E.D. La. 2008) (conditional certification the majority approach)).

[97] *Mooney*, 54 F.3d at 1214.

the claims of opt-in plaintiffs.[98]  Generally, the matter is less appropriate for certification when plaintiffs' job experiences are more dissimilar and when the employer's defenses are more individuated. Although the Fifth Circuit has not specifically endorsed decertification in this manner,[99] the Fifth Circuit has affirmed a district court's decertification decision based on the use of this *Lusardi* approach.[100]  This approach "is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23, Fed. R. Civ. P., and the collective action provided by the FLSA."[101]

**B.    *Analysis***

     In her motion, Chapman looks to the *Lusardi* standard,[102] as does LHC. Accordingly, the Court will apply the *Lusardi* approach in determining whether this case is appropriate for collective action treatment.  To prevail on the conditional certification issue, Chapman must meet her burden of demonstrating a reasonable basis for believing that aggrieved individuals exist, that those aggrieved individuals are similarly situated to her, and that those individuals desire to opt-in to this lawsuit.[103]

     Chapman alleges that each member of the collective action: (a) was employed by Defendant

---

[98] *Id.*

[99] *Id.* at 1216 ("In so holding we specifically *do not* endorse the methodology employed by the district court, and *do not* sanction any particular methodology.  We simply need not decide the appropriate methodology under these facts, and therefore leave that inquiry for another day.").

[100] *Id.* at 1215-16.

[101] *Smith v. Servicemaster Holding Corp.*, No. 10-444, 2011 WL 4591088 (M.D. La., Sept. 30, 2011) (noting the important difference between opt-in and opt-out class actions) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).  *See also*, *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

[102] *See* Rec. Doc. 19-1 at p. 6.

[103] *Morales*, 2009 WL 2524601 at *2.

16

at any point from April 4, 2011 to the present as a nonexempt employee; (b) was compensated on an hourly wage basis; (c)  worked more than forty (40) hours in any given work week; and (d) was prohibited or otherwise did not properly record their work hours over 40 hours in a work week.[104] The burden upon Chapman at this stage is light, and she has met that burden by demonstrating a class of similarly situated individuals performing the same job functions in the field under the same employment scheme.  Three such individuals have already opted to join the present suit.

Marla Cerise, one of three opt-in plaintiffs, submitted an affidavit wherein she attests that she was employed by LHC in Amite, Louisiana from 2007 until June 2012, that she often worked more than 40 hours in a work week without being paid overtime, and that her supervisor and managers prohibited her from recording overtime hours.[105] The other opt-in plaintiffs, Julie Dupuy and Candice Weiss, did not submit affidavits, but in their  "Consent to Join Collective Action" filings, they state that they were employed  by LHC during some or all of the three year period prior to the filing of this lawsuit or the filing of this consent form, and that they worked overtime hours for which they were not compensated properly or at all.[106] Though affidavits from these opt-in plaintiffs may be probative, several courts have found that a plaintiffs' failure to offer additional evidence from potential class members who desire to opt-in is not essential for conditional certification.[107]

---

[104] *Id.*

[105] Rec. Doc. 19-2.

[106]  Rec. Doc. 36; Rec. Doc. 10.

[107] See *Dreyer v. Baker Hughes Oilfield Operations, Inc.*,  2008 WL 5204149, at * 3 (S.D. Tex. Dec. 11, 2008); *Neagley v. Atascosa County*, 2005 WL 354085, *3 (W.D. Tex. 2005) (stating that although affidavits of other similarly situated employees "would help make the initial determination of a collective action easier, the Court does not believe that it is required"); *Taillon v. Kohler Rental Power, Inc.*, 2003 WL 2006593, *3 (N.D. Ill. 2003) (holding that there is no "independent requirement of proof of desire to join in the action for authorization of notice under § 216(b)).

The "similarly situated" standard at the initial conditional certification stage is *lenient,* plaintiff's burden is not heavy, the evidence needed is minimal and the existence of some variations between potential claimants is not determinative of lack of similarity.[108]  Plaintiffs must only be similarly—not identically—situated to proceed collectively.[109]  The Court finds that Chapman has met this lenient standard of proof, having put forth substantial allegations of a "single decision, policy, or plan"[110] by alleging that LHC  purposefully prevented nonexempt employees from recording overtime hours in  order to circumvent FLSA requirements. Chapman has submitted the affidavits and consent notices indicating that three other individuals desire to opt-in to this suit, evidence that other courts have found pertinent to this inquiry.[111]  These individuals  appear to be similarly situated because they are together the alleged victims of a policy or practice of LHC to decline to pay its nonexempt employees earned overtime pay. This suit does not appear to arise from circumstances purely personal to Chapman; rather, it appears that the alleged policy of the LHC would have a general effect on all nonexempt employees who were not compensated for earned overtime within the relevant time period.

The Court is aware that Chapman and the three opt-in Plaintiffs are current or former employees of LHC locations in Louisiana, and that LHC has expressed concerns regarding the nationwide scope of the proposed class. However, the Court finds that these arguments are more appropriately addressed upon a motion to decertify the class at step two of the *Lusardi* analysis.

---

[108] *See Prejean v. O'Brien's Response Mgmt., Inc.*,  2013 WL 5960674, at *5 (E.D. La. Nov. 6, 2013) (Barbier, J.) (listing cases).

[109] *Id.* (citations omitted).

[110]*Mooney*, 54 F.3d at 1214.

[111]*H & R Block*, 186 F.R.D. at 400.

Therefore, the Court finds that this class should be conditionally certified, and potential class members should be given notice and an opportunity to opt in to this collective action.

LHC has objected to Chapman's Proposed Notice[112] and requested that, if a class is conditionally certified, the Court orders the parties to meet and confer regarding the form and content of the Notice and submit to the Court a joint proposed Notice.[113] The Court will grant this request.

### IV. Conclusion

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Chapman's "Motion to Conditionally Certify a Collective Action and Issue Notice"[114] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties meet and confer regarding the form and content of the Proposed Notice. The parties are ordered to submit a joint Proposed Notice within 10 days of the date of this Order.

**NEW ORLEANS, LOUISIANA**, this __13th___ day of November, 2014.

_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[112] Rec. Doc. 19-3.

[113] Rec. Doc. 23 at p. 25.

[114] Rec. Doc. 19.

19