UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CORINNE CHAPMAN                         CIVIL ACTION

VERSUS                                  CASE NO. 13-6384

LHC GROUP, INC.                         SECTION: "G"(3)

## ORDER

Before the Court is Defendant LHC Group, Inc.'s ("LHC") "Motion for Reconsideration of
Order Conditionally Certifying Collective Action, or in the Alternative to Certify Interlocutory
Appeal."[1]  Having considered the motion, the memoranda in support and in opposition, the
statements made at oral argument, the record,  and the applicable law, the Court will grant the
motion in part and deny it in part.

## I. Background

### A.    *Factual Background*

Plaintiff Corrine Chapman ("Chapman") worked for 15 years as an office manager for
Ochsner Home Health Corp. ("Ochsner") in Covington, Louisiana, which  was acquired by LHC in
2009.[2] According to Chapman, she was a nonexempt employee paid hourly, with responsibilities
including scheduling, recording, and reporting the work hours of LHC's hourly employees.[3]
Chapman alleges that LHC never instructed or trained its payroll employees how to properly record
hours worked by hourly employees, or with respect to the record-keeping requirements of  the Fair

---

[1] Rec. Doc. 55.

[2] Rec. Doc. 19-1 at p. 2.

[3] *Id.*

1

Labor Standards Act (the "FLSA").[4]

For several years, according to Chapman, LHC has been reducing its employment costs, including reducing its work force and implementing record keeping and compensation policies prohibiting the payment of overtime wages.[5] Despite the reductions in force, LHC allegedly instructed its hourly employees not to record any overtime hours on their time sheets, even if the employees worked hours in excess of the 40 hour work week.[6] Chapman alleges that LHC supervisors, under "direct orders" from LHC's senior management, instructed her to allow and accept inaccurate time records from employees who actually worked in excess of 40 hours per week, but recorded only 40 hours per week on his or her time sheet.[7] Chapman additionally alleges that she was instructed to modify time sheets of any employees who reported working in excess of 40 hours per week so that the time sheets would show only 40 hours worked.[8]

Chapman alleges that she was regularly scheduled to work exactly eight hours daily and 40 hours weekly, and that she was scheduled to take a 30 minute unpaid lunch break every day.[9] Still, she alleges, she regularly worked in excess of eight hours per day, but was prohibited from reporting this overtime on her time sheet and consequently was not compensated for that time.[10]  According

---

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at p. 4.

[8] *Id.*

[9] *Id.*

[10] *Id.* at p. 5.

to Chapman, prior to June 2013, she reported to supervisors with the title "Director of Nursing."[11] After June 2013, Chapman was supervised by Cheryl Chellette, Director of Ochsner Home Health of Covington and Ochsner Home Health of Kenner.[12] Chapman attests that "[u]pon information and belief, Defendant's record–keeping and compensation policies were dictated and issued by Defendant's senior management and issued to all of defendants's [sic] locations throughout Louisiana and the United States."[13]

**B.    *Procedural Background***

The complaint in this matter was filed on November 8, 2013.[14] On April 4, 2014, Chapman filed a "Motion to Conditionally Certify a Collective Action and Issue Notice,"[15] which the Court granted on November 13, 2014.[16] The Court's November 13, 2014 Order granted Plaintiff's request to conditionally certify a  nationwide  class of office  managers, administrative personnel, and clinical technicians based on the allegations of Chapman and three other employees that they were prohibited from recording more than 40 hours on their time sheets.

LHC filed the pending motion for reconsideration on November 24, 2014.[17] Chapman filed a memorandum in opposition of December 2, 2014,[18] and LHC filed a memorandum in further

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at p. 7.

[14] Rec. Doc. 1.

[15] Rec. Doc. 19.

[16] Rec. Doc. 52.

[17] Rec. Doc. 55.

[18] Rec. Doc. 58.

support of its motion on December 10, 2014.[19] The Court heard oral argument on the pending motion on August 5, 2015.

## II. Parties' Arguments

### A.     *LHC's Arguments in Support*

LHC argues that reconsideration of the Court's November 13, 2014 Order granting conditional certification "is warranted to prevent the manifest injustice that would result to LHC if a nationwide notice is authorized by this Court based on the wholly conclusory and otherwise inadequate allegations submitted by Chapman in support of her motion."[20] LHC does not dispute the Court's articulation of the factors that it considered in evaluating Chapman's motion for conditional certification; rather, LHC asks the Court to reconsider the manner in which it applied those factors to Chapman's allegations, which LHC characterizes as "conclusory."[21] LHC avers that Chapman has not come close to presenting "substantial allegations" that the putative class members were together the victims of a single decision, policy, or plan infected by unlawful conduct, such that the Court could find that the requirements for conditional certification have been met.[22]

First, LHC argues that Chapman has not demonstrated a reasonable basis for believing that other aggrieved individuals exist because she failed to identify any written policy that could arguably violate the FLSA.[23]  According to LHC, its written policies require that all hours worked be recorded on employee timesheets, and "Chapman's effort to identify the requisite single policy

---

[19] Rec. Doc. 63.

[20] Rec. Doc. 55-1 at p. 3.

[21] *Id.* at p. 4.

[22] *Id.*

[23] *Id.* at p. 5.

– to the extent she makes any substantive effort at all – has to be based on her vague and conclusory allegations that unidentified individual supervisors purportedly deviated from these written policies through unspecified verbal instructions to unidentified employees at unidentified locations at unidentified times."[24] LHC contends that Chapman failed to explain how employees were supposedly prevented from recording overtime hours, and that she has failed to identify the specific alleged pay practice at issue.[25]

Next, LHC argues that Chapman has not demonstrated the existence of any aggrieved individuals who are similarly situated to her.[26] According to LHC, the critical issue at the heart of the "similarly situated" analysis is whether the ultimate issues can be tried on the basis of collective or representative proof, or whether such resolution will require individualized proof as to the claims of each plaintiff.[27] LHC cites *Johnson v. Big Lots Stores, Inc.*[28] and *Carey v. 24 Hour Fitness USA, Inc.*[29] to support its argument that courts are particularly reluctant to conditionally certify "off-the-clock" cases such as this one because such cases are inherently not susceptible to resolution using collective proof, and thus are not appropriate for collective action certification.[30]

LHC additionally contends that Chapman has not demonstrated that others desire to opt in

---

[24] *Id.*

[25] *Id.* at p. 6.

[26] *Id.* at p. 7.

[27] *Id.* at p. 8.

[28] *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) (Vance, J.).

[29] *Carey v. 24 Hour Fitness USA, Inc.*, No.10-3009, 2012 WL 4857562 (S.D. Tex. Oct. 11, 2012) (Atlas, J.).

[30] *Id.* at p. 9.

to this case.[31] Despite Chapman's request to certify a nationwide class, LHC argues, only three other individuals have opted into the case, all of whom previously worked at the same facility as Chapman and thus knew her personally.[32] LHC contends that Chapman was unable in her discovery responses to identify any other individuals who were allegedly improperly paid by LHC, much less anyone else who is actually interested in participating in this case.[33] LHC argues that only Chapman and Marla Cerise provided affidavits, and that the other two opt-ins "did not submit any affidavits and their conclusory statements in their opt-in notices that they worked unpaid overtime are boilerplate, highly conclusory, not offered under oath, and say nothing about being prohibited from recording overtime hours on their time sheets."[34] LHC urges this Court to view their failure to present sworn testimony as an implicit indication that they have no supportive testimony to offer.[35] LHC contends that the pending case is similar to *Crowley v. Paint & Body Experts of Slidell, Inc.*,[36] where, according to LHC, this "Court found an equally meager showing of interest warranted the denial of conditional certification."[37]

LHC also argues that the scope of the proposed class which Chapman seeks to certify in this case is unclear, and that Chapman appears to seek certification of a class of all hourly, non-exempt

---

[31] *Id.* at p. 10.

[32] *Id.*

[33] *Id.*

[34] *Id.* at p. 11.

[35] *Id.*

[36] No. 14-0172, 2014 LEXIS 75472 (E.D. La. June 3, 2014).

[37] Rec. Doc. 55-1 at p. 11.

employees, without any regard to their job duties.[38] LHC contends that it would be impossible, based on Chapman's suggested class definition, to determine who would even be part of the putative class.[39] According to LHC, decertification of the nationwide class after discovery is not an adequate remedy because it has the potential to create unwarranted litigation from former class members, who then file individual actions.[40]

Based on the foregoing, LHC urges the Court to reconsider its November 13, 2014 Order and deny conditional certification of the class. In the alternative, LHC requests that the Court certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) to allow the Fifth Circuit to determine the correct procedural method for analyzing requests for class certification in FLSA collective actions.[41]

**B.    *Chapman's Arguments in Opposition to Reconsideration***

In response, Chapman contends that LHC merely repeats the same arguments that it has already asserted on multiple occasions, and that *Crowley* "did nothing to change the standard under which the Court analyzed this ruling."[42] Chapman additionally argues that the plaintiffs in *Crowley* failed to show that putative class members were together the victims of a single decision, policy or plan because the plaintiffs complained of different pay policies.[43] Here, Chapman contends, "all the Plaintiffs complain that Defendant's policy of forcing non-exempt employees to work off-the-clock

---

[38] *Id.* at p. 12.

[39] *Id.* at p. 13.

[40] *Id.* at pp. 14–15.

[41] *Id.* at p. 16.

[42] Rec. Doc. 58 at pp. 1–2.

[43] *Id.* at p. 2.

and not record those hours required them to work overtime hours for which they were not compensated properly."[44] With respect the definition of the putative class, Chapman argues that the class is "clearly and accurately" defined as "[a person who] (a) was employed by Defendant at any point from April 4, 2011 to the present as an [sic] nonexempt [sic] employee; (b) was compensated on an hourly wage basis; (c) worked more than forty hours in any given work week; and (d) was prohibited or otherwise did not properly record their work hours over 40 hours in a work week."[45] Finally, Chapman states that certification for interlocutory appeal of the question of the correct procedural method for similar cases is inappropriate because there is no question of law that will advance the ultimate termination of this case.[46]

## C.     *LHC's Arguments in Reply*

In further support of its motion for reconsideration, LHC contends that:

> [D]espite being afforded another opportunity to bolster her case, it remains clear that Chapman's sole basis for seeking conditional certification of a nationwide class of every single hourly, non-exempt employee of LHC or any of its affiliates, is a conclusory, boilerplate allegation from her and just one other opt-in that they were somehow precluded in unidentified ways by unidentified persons from recording an unknown number of overtime hours on unknown dates and times.[47]

LHC contends that Chapman fails to address its concerns over the scope of the putative class in this case.[48] LHC argues that, based on LHC census data,  a class comprised only of office managers and office assistants in the state of Louisiana would include approximately 310 individuals, and that a

---

[44] *Id.*

[45] *Id.*

[46] *Id.* at p. 3.

[47] Rec. Doc. 63 at pp. 1–2.

[48] *Id.* at p. 2.

nationwide class of office managers and office assistants would include roughly 1,561 individuals.[49] A putative class of every single hourly, non-exempt current and former LHC employee nationwide, LHC contends, would include about 9,161 individuals.[50] Finally, LHC argues that, because Chapman opted not to conduct any discovery prior to moving for conditional certification, there is no factual basis in the record from which the Court could conclude that such individuals are similarly situated or were subjected to the same pay practices that Chapman and the three opt-in plaintiffs allege.[51]

### III. Law and Analysis

**A.    *Standard on a Motion for Reconsideration***

The Court has "considerable discretion" in deciding whether to grant a motion for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[52] This Court's discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an extraordinary remedy that should be used sparingly,"[53] with relief being warranted only when the basis for relief is "clearly establish[ed]."[54]   Courts in the Eastern District of Louisiana have generally considered four factors in deciding motions for reconsideration, which are typically decided under the Rule 59(e) standard:

(1)     the motion is necessary to correct a manifest error of law or fact upon which
         the judgment is based;

---

[49] *Id.* at p. 4.

[50] *Id.*

[51] *Id.* at p. 5.

[52] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[53] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[54] *Schiller v. Phyisicans Resource Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

9

(2)      the movant presents newly discovered or previously unavailable evidence;

(3)      the motion is necessary in order to prevent manifest injustice; or

(4)      the motion is justified by an intervening change in controlling law.[55]

A motion for reconsideration, "'[is] not the proper vehicle for rehashing evidence, legal theories, or arguments. . . .'"[56] Instead, such motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[57] "It is well settled that motions for reconsideration should not be used . . . to re-urge matters that have already been advanced by a party."[58] Reconsideration, therefore, is not to be lightly granted, as "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly"[59] and the motion must "clearly establish" that reconsideration is warranted.[60] When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted.[61]

## B.      Standard for Conditional Certification of a FLSA Class

FLSA sets forth requirements for minimum wage, overtime pay, and record keeping for certain employees who are not exempt because they hold executive, administrative, or professional

---

[55] *See, e.g.*, *Castrillo*, 2010 WL 1424398, at *4 (citations omitted).

[56] *Id.* (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004)).

[57] *See Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[58] *Helena Labs.*, 483 F. Supp. 2d at 539 (*citing Browning v. Navarro*, 894 F.2d 99, 100 (5th Cir. 1990)).

[59] *Templet*, 367 F.3d at 478-79 (citation omitted).

[60] *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[61] *Livingston Downs Racing Ass'n v. Jefferson Downs Corp.*, 259 F.Supp. 2d 471, 481 (M.D. La. 2002).  *See also Mata v. Schoch*, 337 BR 138, 145 (S.D. Tex. 2005) (refusing reconsideration where no new evidence was presented).  *See also FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D. Miss. 1993) (refusing reconsideration where the motion merely disagreed with the court and did not demonstrate clear error of law or manifest injustice).

positions.[62]   FLSA also creates a private right of action for employees when these rights are violated.[63]   Under § 216(b) of FLSA, one or more employees can pursue a collective action in a representative capacity on behalf of similarly situated employees.[64]   There are two requirements to proceed as a representative action: (1) all plaintiffs must be "similarly situated," and (2) a plaintiff must consent in writing to take part in the suit. This latter requirement means that a representative action follows an "opt-in" rather than an "opt-out" procedure.[65]

FLSA does not define the requirements for employees to be deemed "similarly situated." Instead, a two-step method is routinely utilized, which was originally articulated in *Lusardi v. Xerox Corporation*[66] and described in detail by the Fifth Circuit in *Mooney v. Aramco Services, Co.*[67] Under this approach, a court first determines at the "notice stage" whether notice should be given to potential members of the collective action, and this determination is usually made on the basis of "only . . . the pleadings and any affidavits."[68]   Because the court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and

---

[62]  29 U.S.C. §§ 206(a)(1), 207(a)(1), 213(a)(1).  The employer bears the burden of proving the applicability of an exemption.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974).

[63]  29 U.S.C. § 216(b).

[64]  "An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  *Id.*

[65]  *See Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[66]  118 F.R.D. 351 (D.N.J. 1987).

[67]  54 F.3d at 1213–14.

[68]  *See id.*

typically results in 'conditional certification' of a representative class."[69]  Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan" and only a modest factual basis is required.[70] Although this is a lenient standard, "general allegations that the employer violated FLSA are insufficient."[71]

At the notice stage, the burden is on the plaintiff to demonstrate that "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[72]  The burden to show that plaintiffs are similarly situated rests on the plaintiff,[73] but "[a] plaintiff need only demonstrate a *reasonable basis* for the allegation that a class of similarly situated persons may exist."[74]  Plaintiffs need not be identically situated,[75] and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities.[76]  "Whether at the notice stage or on later

---

[69] *Id.* at 1214.

[70] *Id.* at 1214 n.8 (quoting  *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).

[71] *Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 WL 258988, at *4 (E.D. La. June 25, 2008) (Feldman, J.).

[72] *Lang v. DirecTV, Inc*., No. CIV.A. 10 1085 G (1), 2011 WL 6934607, at *4 (E.D. La. Dec. 30, 2011) (Brown, J.); *see also Morales v. Thang Hung Corp.*, 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex., Aug. 14, 2009). *Hickson v. U.S. Postal Service*, No. 5:09-CV-83, 2010 U.S. Dist. LEXIS 104112, at * 18 (E.D. Tex., July 22, 2010).

[73] *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005).

[74] *Lima*, 493 F.Supp.2d at 798 (emphasis added).

[75] *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92–0043, 1992 WL 91946 (E.D. La., Apr. 16, 1992).

[76] *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *21-22 (E.D. La., Oct. 31, 2008) (Barbier, J.).

review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."[77] A plaintiff must do more than show the mere existence of other similarly situated persons, because "there is no guarantee that those persons will actually seek to join the lawsuit."[78]   Only those employees who affirmatively "opt-in" to the suit are bound by a collective action under FLSA.[79]

If conditional certification is granted, the case then proceeds through discovery as a class action to the "merits stage," at which time the defendants may move for decertification.[80]  At that time, a more stringent approach governs and *Lusardi* applies a three-factor test, considering: (1) the extent to which employment settings are similar or disparate; (2) the extent to which any of the employer's defenses are common or individuated; and (3) fairness and procedural concerns.[81]  The court then makes "a factual determination on the similarly situated question,"[82] either allowing the representative action "to proceed to trial" or decertifying the class and dismissing without prejudice

---

[77] *Donohue v. Francis Serv., Inc.*, No. 04-170, 2004 WL 1161366, at * 2 (E.D. La., May 24, 2004) (citations omitted) (granting conditional certification where plaintiffs alleged a common policy of employer denying employees payment and finding affidavits and other documentary evidence sufficient to support the allegations).  "The Court rejects defendants' argument that such a class is problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement."  *Id.* at *3.

[78] *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (citing *Ali v. Sugarland Petroleum*, No. 4:09–cv–0170, 2009 WL 5173508, at *2 (S.D. Tex., Dec. 22, 2009).  *See also, H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) ("[A]lthough the standard for satisfying the first step is lenient, . . . the court still requires at least substantial allegations that the putative class members were together victims of a single decision, policy or plan. . . .") (internal quotation omitted).

[79] 29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[80] *Mooney*, 54 F.3d at 1214.

[81] *Kuperman*, 2008 WL 4809167 at *5 (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 573 (E.D. La. 2008) (conditional certification the majority approach)).

[82] *Mooney*, 54 F.3d at 1214.

the claims of opt-in plaintiffs.[83]   Generally, the matter is less appropriate for certification when plaintiffs' job experiences are more dissimilar and when the employer's defenses are more individuated. Although the Fifth Circuit has not specifically endorsed decertification in this manner,[84] the Fifth Circuit has affirmed a district court's decertification decision based on the use of the *Lusardi* approach.[85]   This approach "is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23, Fed. R. Civ. P., and the collective action provided by the FLSA."[86]

## C.   *Analysis*

LHC argues that reconsideration of the Court's November 13, 2014 Order is necessary to correct a manifest error of law.  According to LHC, the Court erred in finding that Chapman carried her burden to demonstrate that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.

First, LHC contends that there is not a reasonable basis for crediting the assertion that aggrieved individuals exist. In support of this argument, LHC cites *Carey v. 24 Hour Fitness USA,*

---

[83] *Id.*

[84] *Id.* at 1216 ("In so holding we specifically *do not* endorse the methodology employed by the district court, and *do not* sanction any particular methodology.  We simply need not decide the appropriate methodology under these facts, and therefore leave that inquiry for another day.").

[85] *Id.* at 1215-16.

[86] *Smith v. Servicemaster Holding Corp.*, No. 10-444, 2011 WL 4591088 (M.D. La., Sept. 30, 2011) (noting the important difference between opt-in and opt-out class actions) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).  *See also*, *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

*Inc*, a case from the Southern District of Texas.[87]  In *Carey*, the plaintiff worked as a "membership counselor" at a health club that was operated as part of a nationwide chain. The plaintiff asserted that the club violated the FLSA by failing to pay him overtime wages, and, after completing discovery, sought conditional certification of a FLSA class. Specifically, the plaintiff argued that the club imposed sales goals on membership counselors that they could not meet without working overtime, and that the club managers did not want the membership counselors to record overtime hours because they wanted to reduce labor costs.  The district court found, however, that whether a membership counselor could meet the sales goals without working overtime would depend on the goals set for each individual, and that "[t]he evidence indicates that the sales goals are not uniformly distributed among the Membership Counselors."[88]  Determining each individual's ability to meet those goals, according to the district court, "would require an individual assessment of each individual's sales ability, commitment, availability, and the amount of traffic in the club during that Membership Counselor's working hours."[89]  Additionally, the district court found that the plaintiff "has identified no Membership Counselors who have demonstrated an interest in joining this lawsuit," even though the case had been pending for approximately two years and plaintiff's counsel had maintained a website providing "extensive information" about the lawsuit.  Accordingly, the district court denied the plaintiff's motion for conditional certification of a FLSA class.

Despite LHC's arguments to the contrary, the Court finds that *Carey* is neither binding nor persuasive authority on this Court.  Unlike in *Carey*, the parties here have not conducted discovery

---

[87] *Carey v. 24 Hour Fitness USA, Inc.*, No.10-3009, 2012 WL 4857562, at *1 (S.D. Tex. Oct. 11, 2012) (Atlas, J.).

[88] *Id.* at *2.

[89] *Id.*

on the conditional certification issue. The Court notes, also, that discovery is not required at this stage. Moreover, the *Carey* court found that the existence of similarly situated individuals was a "highly individualized analysis" because each membership counselor's ability to meet sales goals without working overtime depended on individualized factors including the person's unique sales goals and sales abilities, the amount of customer traffic in each club location, the age of each club, and the time of year. Here, in contrast, there is no argument that the hours or work schedules of the putative class members are dependent on individualized goals, abilities, or any of the other factors identified as relevant by the *Carey* court. Finally, unlike the plaintiff in *Carey*,  Chapman has identified three other individuals who wish to opt in to the lawsuit. Accordingly, the Court does not find *Carey* to be persuasive.

LHC additionally urges the Court to consider the "lesson" of another section of this district court's "experience" in *Johnson v. Big Lots Stores, Inc.*[90] In that case, two assistant store managers ("ASMs") sued Big Lots, asserting that it misclassified ASMs as executive employees and thereby unlawfully denied them overtime pay in violation of the FLSA. Utilizing the two-stage *Lusardi* approach, the district court conditionally certified the matter as collective action. As a result, a nationwide class of  936 current and former Big Lots ASMs was formed. After roughly two years of discovery, Big Lots moved three times to decertify the class.  Based on the evidence before it at the time, and in light of the plaintiffs' claim that Big Lots maintained a *de facto* policy and practice of misclassifying the ASM job position, the district court denied each motion for decertification.[91] However, after conducting a seven day bench trial and reviewing the evidence and expert testimony

---

[90] Rec. Doc. 55-1 at p. 9 (*citing Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008) (Vance, J.)).

[91] *Big Lots*, 561 F. Supp. 2d at 571.

put forth by both parties, the district court decertified the action because the opt-in plaintiffs' self-reported job responsibilities were so dissimilar that they could not establish "that Big Lots maintained a uniform corporate policy and practice of misclassifying the ASM *job position*."[92] The district court expressly noted that "the same scope of evidence about plaintiffs' job experiences was not before it at the initial decertification stage, and plaintiffs' earlier showing entitled them to proceed with their theory of the case."[93]

LHC urges the Court to consider the "lesson of the [c]ourt's experience in *Big Lots* . . . that, in order to avoid unnecessary expenditure of court and litigant resources, it is incumbent upon a district court to determine at the earliest possible stage when a case is not suitable for collective action certification."[94] The Court notes, first, that *Big Lots* is not binding authority on this Court. Moreover, unlike in *Big Lots*, in the instant case there has been no discovery, testimony, class certification, motions for class decertification, or trial. Instead, the instant case is merely at the conditional certification stage. Accordingly, the Court does not find *Big Lots* to be persuasive with respect to the issue of conditional certification.

LHC also contends that this Court denied a motion for conditional certification of a FLSA class in *Crowley v. Paint & Body Experts of Sidell, Inc.*, and that the same result is appropriate here.[95] In *Crowley*, two plaintiffs, Crowley and Brown, alleged that they were not paid overtime while employed by an auto body shop. The Court denied their motion for conditional certification

---

[92] *Id.* at 578 (emphasis in original).

[93] *Id.* at 587.

[94] Rec. Doc. 55-1 at p. 9.

[95] *Id.* at p. 11 (*citing Crowley v. Paint & Body Experts of Slidell, Inc.*, No. 14-0172, 2014 WL 2506519 (E.D. La. June 3, 2014) (Brown, J.)).

of a FLSA class, concluding as follows:

> While both Plaintiffs describe potential violations of FLSA, they appear to have worked very different hours (Brown worked substantially more than Crowley), been paid at dissimilar rates (up to 40 hours, Brown made about 32% less than Crowley), and received overtime pay in different manners (Crowley was paid at $20.00 per hour while Brown received a lump sum of $200.00). Further, their allegations cover different time periods. Finally, Crowley and Brown have offered only conclusory assertions that other employees were subject to unlawful overtime policies and would desire to opt-in to this action.[96]

In the instant case, unlike in *Crowley*, there is no indication that Chapman and the named opt-in plaintiffs were subject to different wage and overtime schemes, or that their allegations cover different time periods. Moreover, as this Court noted in its November 13, 2014 Order, three individuals in addition to Chapman have demonstrated that they wish to opt in to this lawsuit. Accordingly, the Court finds that the instant case is easily distinguishable from *Crowley*.

Finally, LHC argues that a nationwide class comprised of office managers, administrative personnel, and clinical technicians is overly broad and would include approximately 9,161 individuals.[97] During the August 5, 2015 oral argument on the pending motion, the parties agreed to narrow the scope of the putative class to include only office managers and administrative personnel, thereby excluding clinical technicians. As a result of this agreement, the putative class would be comprised of approximately 1,200–1,500 individuals nationwide,[98] including 310 individuals in Louisiana.

Although they agree to exclude clinical technicians from the class definition, the parties

---

[96] *Id.* at *8.

[97] *See* Rec. Doc. 63 at pp. 4–5.

[98] LHC states in its briefing that a nationwide class of office managers and administrative personnel would include 1,561 individuals. *See* Rec. Doc. 63 at p. 4. At oral argument, the parties represented that this class would include 1,200 individuals.

18

continue to dispute the proper geographic scope of the putative class. At oral argument, Chapman represented that a nationwide class is appropriate because LHC's corporate headquarters is located in Louisiana and, apparently, that this supports her argument that the policies at issue were implemented nationally. LHC contends that each agency is run autonomously and independently, and that the location of LHC's headquarters does not justify a nationwide class.

The Court finds that reconsideration of the geographic scope of the putative class is warranted in this case. Chapman cites no legal authority supporting her argument that the location of company headquarters near the lead plaintiff is sufficient to support even the conditional certification of a FLSA class. Moreover, Chapman has not alleged in her pleadings or the complaint in this matter that she actually worked at LHC headquarters; rather, she alleges that she worked at Ochsner Home Health Corp., which  was acquired by LHC in 2009.[99] Additionally, Chapman provides no indication  that any similarly-situated aggrieved individuals exist outside of Louisiana. Chapman has not put forth any factual basis in support of her request for certification of a nationwide class. Although the conditional certification standard is fairly lenient,  "general allegations that the employer violated FLSA are insufficient."[100]  Accordingly, to the extent that LHC requests that the Court reconsider the geographic scope of the putative class and to limit the class to in-state LHC employees, the motion for reconsideration will be granted.  The putative class will be limited to office managers and administrative personnel in the state of Louisiana.

LHC also requests that the Court certify for interlocutory appeal the question of whether the two-stage *Lusardi* approach is the correct framework to apply in FLSA class certification motions,

---

[99] Rec. Doc. 19-1 at p. 2.

[100] *Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 WL 258988, at *4 (E.D. La. June 25, 2008) (Feldman, J.).

and what standards of proof and levels of scrutiny district courts should apply. Considering that neither party disputes the applicability of the *Lusardi* approach here, and since that approach is routinely used by courts in this district,[101] the Court will deny LHC's alternate motion for certification of these questions for interlocutory appeal.

## IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that LHC's "Motion for Reconsideration of Order Conditionally Certifying Collective Action, or in the Alternative to Certify Interlocutory Appeal"[102] is **GRANTED IN PART AND DENIED IN PART.** To the extent that LHC requests reconsideration of the scope of the putative class, reconsideration is granted. The putative class will consist of office managers and administrative personnel in Louisiana. To the extent that LHC requests reconsideration of any other aspect of the Court's November 3, 2014 Order, reconsideration is denied.

**IT IS FURTHER ORDERED** that the parties  meet with the Magistrate Judge assigned to this case on September 2, 2015 to discuss the form and content of the Proposed Notice. The parties

---

[101] *See  Melson*, 2008 WL 258988 ("[I]t is clear that the two-step ad hoc Lusardi approach is the preferred method . . . ."); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 569 (E.D. La. 2008) (Vance, J.) (describing the Lusardi approach as the "prevailing method"); *Basco v. Wal-Mart Stores*, No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (Duval, J.) ("Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reach on how section 216(b) cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis . . . ."); *see also* 7B C. Wright & A. Miller, Federal Practice & Procedure § 1807 (3 ed. 2002) (stating that "most courts in collective actions follow a two-stage certification process").

[102] Rec. Doc. 55.

are ordered to submit a joint Proposed Notice within 14 days of that conference.

**IT IS FURTHER ORDERED** that LHC's request that the Court certify an interlocutory

appeal is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this __27th__ day of August, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

21